

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-5-2007

# Weiler v. R&T Mech Inc

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-4654

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Weiler v. R&T Mech Inc" (2007). *2007 Decisions.* Paper 265.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/265

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 06-4654

_____

ARTHUR WEILER, JR.,

Appellant,

v.

R&T MECHANICAL, INC.

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 4-cv-05-2433)
District Judge: Honorable Malcolm Muir

_____

Submitted Under Third Circuit LAR 34.1(a)
October 26, 2007

Before: SLOVITER, CHAGARES and HARDIMAN, *Circuit Judges*.

_____

(Filed November 5, 2007  )

_____

OPINION OF THE COURT

_____

CHAGARES, Circuit Judge.

This is an employment discrimination case arising under Title VII of the Civil

Rights Act of 1964 (Title VII), as amended, 42 U.S.C. §§ 2000(e) et seq., and under the

Pennsylvania Human Relations Act (PHRA), 43 Pa. Cons. Stat. Ann. § 951 et seq.

Appellant Arthur Weiler, Jr. (Weiler) appeals the District Court's order granting summary

judgment for Appellee R&T Mechanical, Inc. (R&T) on his retaliatory discharge claim.

For the following reasons, we will affirm.

I.

Weiler began working at R&T, an industrial contractor owned by Timothy

Baughman, on February 5, 1997. Weiler eventually became General Supervisor (the

second in command at R&T's North division) and he worked directly for Robert Savidge,

R&T's General Manager.

Kimberly Lauterborn also worked at R&T. In 2002, Lauterborn told Weiler that

Savidge was sexually harassing her. Weiler did not inform Baughman of these

allegations, but he did suggest that Lauterborn tell Baughman. She did not, and Savidge's

inappropriate behavior continued. In the summer of 2003, Weiler and Lauterborn

confronted Savidge about his conduct. Savidge admitted that he had harassed Lauterborn,

and promised to stop. Weiler did not tell Baughman about Savidge's behavior at this time

either. At some point, Weiler also learned that another W&T employee, Larry Kroeck,

2

had engaged in inappropriate sexual behavior with co-workers. Weiler did not tell Baughman about Kroeck's behavior.

As General Supervisor, part of Weiler's responsibility was to prepare bids for jobs. In January 2004, Weiler bid on a job in Texas that resulted in significant losses to R&T. In February 2004, Weiler bid on a job in Alabama. On this job, too, Weiler underbid, and R&T eventually lost approximately $100,000.00 on the Alabama job. In May 2004, Weiler traveled to Alabama to supervise one of two crews working on that job. An R&T employee named Greg Nagy managed the other crew.

In June 2004, Weiler first told Baughman about Savidge's inappropriate behavior regarding Lauterborn. Baughman seemed upset with Weiler, and told Weiler that he wanted to meet with Lauterborn. Later that day, Baughman met with Lauterborn, and she confirmed Savidge's harassment. Still later that day, Baughman met with Savidge. When Savidge admitted that Lauterborn's allegations were true, Baughman fired Savidge immediately.

On June 17, 2004, Baughman wrote Weiler a letter reprimanding him for not telling Baughman earlier about Savidge's behavior. The letter pointed out that Weiler's silence violated his job description and that Weiler was "absolutely required to report [harassment to Baughman] immediately upon hearing of even the possibility" of such activity. Weiler Dep. Ex. 1 (June 17, 2004 Letter of Reprimand). Baughman did not

3

demote Weiler because he reported Savidge's sexual harassment, nor did Baughman change Weiler's job title, salary, or duties.

On approximately July 5, 2004, Weiler told Baughman about Kroeck's behavior. Baughman again became upset, cut Weiler off as he was speaking, and yelled at Weiler.

On July 17, 2004, Weiler and Nagy got into an argument at the Alabama job site. Weiler began experiencing chest pains and went to the hospital, where he was told to get medical attention from his doctor in Pennsylvania within two days. On July 18, 2004, Weiler met with Nagy and told Nagy that he was going back to Pennsylvania. Weiler then dismantled his crew of workers and sent them all home. The client's on-site supervisor stated that Weiler told him Weiler was leaving the job because "the project was causing him to [sic] much stress and that he was unable to get a handle on the job." Weiler Dep. Ex. 6 (Aug. 25, 2005 Letter from Ron Ramer of ETA Eng'g to Baughman). Weiler did not tell Baughman in advance that he was leaving Alabama, that he was unable to get a handle on the job, or that he was dismissing his crew and sending them home.

On July 19, 2004, Weiler called Baughman to tell him that he had left the job site in Alabama. Baughman fired Weiler during the phone call, and then sent him a letter, dated July 19, 2004, stating that Weiler had been terminated for "extreme and un-acceptable losses" and for "lack of communications and co-ordination on projects." Baughman Dep. Ex. 5 (July 19, 2004 Termination Letter).

Weiler filed this action on November 22, 2005, and the District Court granted R&T's Motion for Summary Judgment on October 25, 2006.

## II.

The District Court had jurisdiction under 28 U.S.C. § 1331 and we have jurisdiction over this appeal from the District Court's final judgment and order pursuant to 28 U.S.C. § 1291. The non-moving party must offer a genuine issue of material fact to survive summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When the District Court grants summary judgment, "[o]ur review is plenary, and we view the facts in the light most favorable to the [non-moving party]." Jensen v. Potter, 435 F.3d 444, 448 (3d Cir. 2006). Accordingly, "[i]f a reasonable jury could find for [the non-moving party], we must reverse." Id.

## III.

To establish a prima facie case of retaliation under Title VII, Weiler must show that (1) he engaged in protected activity, (2) R&T took a materially adverse action against him, and (3) there was a causal connection between the protected activity and R&T's action. See Moore v. City of Philadelphia, 461 F.3d 331, 341-42 (3d Cir. 2006). If Weiler establishes this prima facie case of retaliation, the familiar McDonnell-Douglas approach applies in which the burden of production shifts to R&T to articulate a legitimate, nondiscriminatory reason for Weiler's termination. See McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Once R&T meets this relatively light burden,

5

the burden of production returns to Weiler, who must show by a preponderance of the evidence that R&T's proffered reason is pretextual.  See id. at 804-05.

Weiler has proffered evidence that he engaged in activity protected by Title VII (namely, telling Baughman that Lauterborn had been harassed by Savidge).  Weiler also suffered a materially adverse action, since he was terminated from his job.[1]  Therefore, Weiler can make out a prima facie case of retaliation if he raises a genuine issue regarding the following question:  does the record reflect a causal link between Weiler's protected activity and his termination?  Weiler argues that the causal connection is established by the temporal proximity of his disclosure to Baughman to his termination, and by the "animosity" that Baughman showed towards Weiler when Weiler brought Savidge's behavior to Baughman's attention, and then again when he related Kroeck's

---

[1] We note that the District Court used an outdated definition of the prima facie test's second prong by citing to Robinson v. City of Pittsburgh, 120 F.3d 1286, 1300 (3d Cir. 1997) (requiring those claiming unlawful retaliation to show an "adverse employment action" that "alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee").  This definition has been altered by the Supreme Court's recent decision in Burlington Northern and Santa Fe Railway Co. v. White, — U.S. —, 126 S. Ct. 2405, 2412-13 (2006), which held that "the anti-retaliation provision [of Title VII], unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment."  Id., see also Moore v. City of Philadelphia, 461 F.3d 331, 341 (3d Cir. 2006).  Therefore, with respect to the second element of a prima facie case, a plaintiff claiming retaliation under Title VII must now show only that a reasonable employee would have found the alleged retaliatory actions "materially adverse" in that they "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  Burlington Northern, 126 S. Ct. at 2415.  Here, of course, the difference was immaterial, as Weiler's "adverse action" would satisfy the second prong under either definition.

behavior to Baughman. We hold that Weiler cannot show a causal link and that his retaliation claim therefore fails.

We may examine a "broad array of evidence" in determining whether a sufficient causal link exists to survive a motion for summary judgment. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 284 (3d Cir. 2000). A plaintiff can demonstrate, for instance, temporal proximity, intervening antagonism or retaliatory animus, inconsistencies in the employer's articulated reasons for terminating the employee, or any other evidence in the record sufficient to support the inference of causality. Id. at 279-81. "[T]emporal proximity alone will be insufficient to establish the necessary causal connection when the temporal relationship is not 'unusually suggestive,'" and we must always look to the "entire record before us" to determine whether the causation element is met. Id. at 280.

Here, a crucial intervening fact broke the causal chain between Weiler's reporting of Savidge's inappropriate behavior and Weiler's termination: Weiler's abandonment of the Alabama job site. It is undisputed that Weiler was in charge of one of R&T's two shifts on the Alabama job. It is also undisputed that on July 18, 2004, Weiler unilaterally dismantled his Alabama crew and sent them home. It is further undisputed that Weiler then left Alabama and returned to Pennsylvania. Finally, it is undisputed that Weiler did not inform Baughman of any of these events until after they transpired. Weiler's termination was in accordance with R&T's Employee Handbook, which provides that

7

employees cannot be absent for more than one day without authorization, and that violation is grounds for immediate discharge. Weiler Dep. Ex. 12 (R&T Employee Handbook § IX.A(6)).

Even assuming that Weiler could demonstrate a causal connection between his protected activity and his termination – which he cannot – he has offered no evidence that could permit a reasonable factfinder to conclude that R&T's proffered reasons for terminating him were pretextual. Once an employer has proffered a legitimate, nondiscriminatory reason for terminating an employee, "the plaintiff must be able to convince the factfinder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action." Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500-01 (3d Cir. 1997). Because the ultimate issue is whether "discriminatory animus" motivated the employer, it is not enough to show that the employer made a wrong or mistaken decision. Rather, the plaintiff must uncover "weaknesses, implausibilities, inconsistencies, or contradictions" in the employer's explanation that would allow a reasonable factfinder to believe that the employer did not truly act for the asserted reason. Fuentes, 32 F.3d at 765.

Here, Baughman's July 19, 2004 termination letter to Weiler listed "extreme and un-acceptable losses" as one reason Weiler had been terminated. Baughman Dep. Ex. 5. Weiler conceded at his deposition both that R&T lost significant sums of money on the Texas and Alabama jobs, and that, since he bid on both jobs, that he was at least partially

8

responsible for those losses. Thus, Weiler has not shown that this explanation is false, weak, or even implausible. The termination letter also cited "lack of communication and co-ordination" as a reason for Weiler's termination. Baughman Dep. Ex. 5. Weiler does not dispute that: 1) for nearly two years after learning of Savidge's harassment of Lauterborn, he did not inform Baughman; 2) after receiving the June 17, 2004 letter informing him that he was required to tell Baughman immediately about any possible harassment at R&T, he nevertheless waited another three weeks before telling Baughman about Kroeck's improper behavior; and 3) he did not inform Baughman that he had sent his crew home and left the Alabama job until after the fact. These three instances could, of course, constitute "lack of communication and coordination." Id. Therefore, Weiler has not shown that this explanation was false or implausible. Accordingly, both R&T's written manual and Baughman's July 19, 2004 termination letter provided legitimate reasons for firing Weiler, and Weiler offers no evidence that these reasons were pretextual. Therefore, the District Court properly granted R&T's summary judgment motion.

## IV.

For the foregoing reasons, we will affirm the judgment of the District Court.